FILED
CLERK
2:09 pm, Sep 24, 2025
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MIGUEL JIMENEZ,

                Plaintiff,

- against –

CHARLES JAVOROWSKY and
DANIEL BILZ,

                Defendants.[1]
------------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER**

18-CV-3911 (GRB)(AYS)

**GARY R. BROWN, United States District Judge**:

In this §1983 action, defendants Charles Javorowsky and Daniel Bilz move for summary judgment. Those motions are granted in part and denied in part for the reasons set forth herein and as summarized in the table contained in the conclusion section.

**FACTS**

The following represents the undisputed facts, facts which are, based on the evidence provided, indisputable, and/or facts which are deemed admitted as a result of inadequate disputation.

On January 1, 2018, Emalee Jimanez, plaintiff's daughter, was upstairs in plaintiff's home, while plaintiff and his wife were entertaining "old friends" named Douglas Kuhn and his wife,

---

[1] On consent, the Court dismissed the *Monell* claim against Nassau county at the pre-motion conference on May 30, 2024. DE 89 at 36. In addition, "[p]laintiff's claims against . . . Nassau County Police Department cannot proceed, as [it] do[es] not have a legal identity separate and apart from Nassau County and thus cannot be sued." *Haddock v. Nassau Dist. Attorney's Off.*, No. 22-CV-6161 (KAM), 2023 WL 3231489 at *1 (E.D.N.Y. May 3, 2023). Accordingly, the caption has been amended to remove Nassau County and Nassau County Police Department as defendants. Moreover, plaintiff never identified Police Officers John Doe(s) 1-10, who have similarly been removed.

1

Annie McMenamin. Docket Entry ("DE") 94-8 at 20-28.[2] Suddenly, she heard a thud, as though someone had fallen to the floor, sounds of wrestling or scuffling and overheard part of an argument between plaintiff and Kuhn. *Id.* at 30. Emalee heard Kuhn yelling that he was going to kill plaintiff "in front of his family" and was going to get a gun to carry out that threat. *Id.* at 31. She then heard Kuhn saying that he was going to hurt plaintiff and his family. *Id.* at 34. Emalee witnessed Kuhn, whom she found to be a "scary guy," punch a hole in the wall of the house (something he did a second time) and again threaten to get his gun. *Id.* at 35.

Emalee borrowed her sister's phone and called 9-1-1. She later testified as to the content of the call, reporting that she told the operator:

> That I was scared and that this guy was really going to harm us. I was telling her what I had heard him say. Like about the gun and whatnot. If we could have a police officer come.

*Id.* at 36. Police records indicate that the call was received at approximately 5:43 p.m., and reflect that the caller communicated the following:

> There is a really bad dispute here, I feel like someone is going to get hurt. There is a guy who is really unstable and strong and he was invited over and is punching holes in the wall, he is threatening to kill people . . . he is threatening my parents, me and my little sister.

DE 94-19 at 8-9. A disturbance could be heard in the background of portions of the tape. *Id.* Approximately one minute later, a second call was made to 9-1-1 by an unknown male caller stating "Disturbance at 212 Gordon Aveneue, Westbury. Quickly." *Id.* The male caller then hung up. *Id.*

Six officers, including defendants Javorowsky and Bilz, responded to the premises. DE 84

---

[2] While the Court has, for the sake of brevity, cited the parties' Rule 56.1 statements and deposition testimony, such assertions have also been verified through examination of the underlying evidence submitted on this motion. DE 94-96

2

at ¶ 15.  Javorowsky had previously been to the premises responding to a domestic disturbance call.  *Id.* at ¶ 37.  The parties agree that the officers "arrived to a hectic, chaotic scene."  *Id.* at ¶ 16.  Kuhn was intoxicated and belligerent.  *Id.* at ¶ 17.  Two officers, assisted by Javorowsky and Bilz, placed Kuhn under arrest.  *Id.* at ¶ 19.  During that process, Kuhn's wife, Annie McMenamin, who appeared intoxicated, became angry and belligerent, yelling and screaming at the officers, and may have taken a "swing" at Javorowsky without touching him.  *Id.* at ¶ 20-21.  After continued interactions between the officers, McMenamin, plaintiff and his wife, Javorowsky told plaintiff that he needed to check the house to ensure that no one inside was hurt.  *Id.* at  ¶ 26.  Plaintiff replied "you're not going into the house without a warrant."  *Id.*.  After some exchanges, plaintiff continued to insist that the officers get a warrant before entering the property and referred to "controlling his dogs," – a pair of Dobermans – which the officers may have interpreted as a threat.  *Id.* at ¶¶ 28-31, DE 94-4 at 81.  Plaintiff re-entered the house, accompanied by McMenamin, closing and apparently locking the door behind him.  DE 84 at ¶ 32.  Whether McMenamin entered with him voluntarily or was forced by plaintiff remains in dispute.  *Id.* at ¶ 33.

      The officers had not had the opportunity to speak with the 9-1-1 caller or the opportunity to fully investigate the reasons for the call.  *Id.* at ¶ 35.  As a result of his previous visit to the home, Javorowsky was aware that the residents of the home included plaintiff's wife, her mother, and her two daughters.  *Id.* at ¶ 38.  The officers did not know who else was in the home or who had made the call, other than from statements made by plaintiff's wife and another daughter.  *Id.* at ¶ 34.

      A sort of standoff – which seems to have lasted between fifteen minutes and one hour – followed, and while the parameters of this impass remain somewhat in dispute, several aspects are undisputed.  For much of the time, plaintiff leaned out of a window, purportedly holding his cell

3

phone in what he claimed to be an effort to "record the police activity from a safe distance for approximately one (1) hour." *Id.* at ¶ 39. The parties sent the cell phone for a joint forensic investigation which revealed that the phone did not contain any video or audio recordings of the events of that day. DE 99.[3] Officers requested that plaintiff open the door more than once, and plaintiff refused. DE 84 at ¶ 43. It is undisputed that Bilz went to the front of the house and requested that plaintiff and anyone else inside come out so that the officers could conduct their investigation. *Id.* at ¶ 44. Plaintiff admits that the officers told him to open the door and threatened to arrest him for the unlawful imprisonment of McMenamin. *Id.* at ¶ 52. During this period, McMenamin was seated in a chair in the dining room, sitting on the dining room table and/or lying on the floor of the kitchen. *Id.* at ¶¶ 45, 46, 55; DE 94-4 at 99. It is further undisputed that, from outside the house, the police could see McMenamin inside through the glass of the front door. DE 84 at ¶ 54.

At some point, Bilz and a second officer went to the side of the house in an effort to intercept plaintiff. *Id.* at ¶ 58. The officers slipped on ice and fell to the ground. DE 94-4 at 99. Meanwhile, Javorowsky kicked open the front door and entered the house with a second police officer. DE 84 at ¶ 59. A scuffle ensued; Javorowsky engaged with the plaintiff, but he fell to the floor. *Id.* at ¶¶ 60-61. Ultimately, plaintiff's arms were pulled behind him and he was handcuffed; whether he resisted this process is disputed. *Id.* at ¶ 65. Javorowsky acknowledged punching plaintiff several times "near his head and shoulder," though asserts that this was in an effort to get plaintiff to comply with being handcuffed. *Id.* at ¶ 66. Once the handcuffs were in place, the

---

[3] Though ultimately irrelevant, it is troubling that assertions by plaintiff's counsel repeatedly suggests that such a video was actually made when counsel knew this to be untrue. DE 84 at ¶ 39 ("Plaintiff [was] all the while utilizing his cell phone to record the police activity"); *Id.* at ¶ 45 ("Plaintiff was recording in the kitchen"). At best, he *attempted* to do so, a critical distinction which delayed these proceedings. *See* Order dated September 9, 2025.

4

officers did not use further physical force against him. *Id.* at ¶ 67. Bilz did not use any physical force against plaintiff. *Id.* at ¶ 69; Bilz Aff. ¶ 11.[4]

Plaintiff claims that an officer uttered a racial slur and other obscenities at him during the altercation but is unable to identify which officer uttered the statement. DE 84 at ¶ 69; DE 94-4 at 100, 112-13. Both Javorowsky and Bilz deny making this alleged statement, and plaintiff offers nothing to controvert their assertions. DE 84 at ¶ 70. Notably, Bilz was not present during the altercation, as he and another officer were at the side of the house at that time. *Id.* at ¶ 62.

At 5:44 p.m., about 50 minutes after the 9-1-1 call, plaintiff was transported to the Third Precinct, at which point Javorowsky went to the hospital to be treated for an injury to his hand. DE 84 at ¶ 79; DE 94-5 at 73.[5] Plaintiff was charged with Second Degree Assault, Second Degree Unlawful Imprisonment and Resisting Arrest. In a "Short Form Order" dated July 26, 2018, the Nassau County District Court reduced the pending felony complaint as to the assault charge to a complaint charging a non-felony offense (Third Degree Assault), finding "there is reasonable cause to believe that the defendant committed a felony," but that with the consent of the District Attorney and in the interest of justice, the reduction was warranted. DE 94-23. Then, on September 11, 2018, the case against plaintiff was dismissed for violation of his speedy trial rights under state law. DE 94-24 at 2-3.

---

[4] Plaintiff's nominal effort to dispute this assertion, which is plainly supported by the affidavit cited, proves unavailing: plaintiff's citation to the IAU Correpondence marked as Ex. P is wholly inapposite.

[5] Counsel for defendants asserts this fact, which is of the most marginal relevance, citing page 75 of the deposition, which it actually appears on page 72. DE 84 at ¶ 77. In a disappointing moment of gamesmanship, plaintiff's counsel seeks to controvert this fact by noting that the citation does not support the assertion, while counsel, who took the deposition, well knows its content. Such wasteful manenuevers do not further the resolution of this matter, and could affect other determinations, including, if applicable, any future award of attorneys fees.

5

**DISCUSSION**

*Summary Judgment Standard*

This motion for summary judgment is decided under the oft-repeated and well-understood standard for review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211-12 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. In sum, the question before the Court is whether, based upon the undisputed or improperly disputed facts, the defendants are entitled to summary judgment. Moreover, as this Court has previously held:

> [T]o oppose a motion for summary judgment, a party is required by the Court's Local Rules to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and "each statement controverting any statement of material fact ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56(d); *Tuccio v. FJC Sec. Servs., Inc.,* No. CV 12-5506(JFB)(GRB), 2014 WL 4438084, at *5 (E.D.N.Y. Aug. 18, 2014), *adopted by*, 2014 WL 4438469 (E.D.N.Y. Sept. 8, 2014), appeal dismissed, (2d Cir. Mar. 18, 2015). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." *Covelli v. Nat'l Fuel Gas Distrib. Corp.,* 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001) (*citing Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ), *aff'd, Covelli v. Nat'l Gas Distrib. Corp.,* 49 F. App'x 356 (2d Cir. 2002).
>
> Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." L. Civ. R. 56.1(c); *D.N. ex rel. D.N. v. Bd. of Educ. of Ctr. Moriches Union Free Sch. Dist.,* No. CV 14-99(GRB), 2015 WL 5822226, at *3 n.3 (E.D.N.Y. Sept. 28, 2015); *see also Edmonds v. Seavey,* No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *1 n.2 (S.D.N.Y. Sept. 15, 2009), *aff'd,* 379 F. App'x 62 (2d Cir. 2010); *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.,* No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007). Again, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz,* 258 F.3d at 73, and the Court may not rely solely upon the failure to controvert assertions made in a Rule 56.1 statement if

6

> those assertions are not supported in the record. *See Giannullo,* 322 F.3d at 140 ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *but see Jackson v. Fed. Express,* 766 F.3d 189, 196 (2d Cir. 2014) (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").

*Davis v. Town of Hempstead*, 2019 WL 235644, at *3 (E.D.N.Y. 2019).

Having identified the undisputed facts above, this standard guides the Court's determinations as to the pending causes of action as follows:

   1. *Racial Discrimination Claim*

Plaintiff brings a claim of racial discrimination against defendants under §1983, predicated upon the hurling of a racial epithet at him during the physical altercation at the time of his arrest. As noted, however, he cannot identify by whom this statement was made. Of the two individual defendants, Javorowsky filed a sworn affidavit indicating that he did not make such a comment and, despite the completion of a fulsome discovery process, plaintiff offers no evidence to rebut this assertion. Bilz was, indisputably, not present when the comment was made. Individual liability under §1983 requires proof of personal involvement of a particular defendant in the violation; having failed to establish such involvement by the individual defendants, plaintiff cannot succeed on this claim. *Patterson v. Cnty. of Oneida, N.Y.,* 375 F.3d 206, 229 (2d Cir. 2004) ("a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983"). Accordingly, defendants are entitled to summary judgment as to the racial discrimination claim.

   2. *False Arrest*

Defendants move for summary judgment as to the false arrest claims, a motion rooted in the contention that "Javorowsky observed a woman—McMenamin—appear to want to leave the

7

residence, and plaintiff prevented her from doing so by forcing her into a chair several times," and that he "witnessed [p]laintiff pull McMenamin from the chair and start to drag her toward the back of the room with the staircase and side door."  DE 94-27 at 19.  This assertion is anything but undisputed.  Thus, defendants' motion for summary judgment as to false arrest fails.

   *3. Malicious Prosecution*

"To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice.'" *Kee v. City of New York*, 12 F.4th 150, 161–62 (2d Cir. 2021) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 712 N.Y.S.2d 438, 734 N.E.2d 750, 752 (2000)).  Here, as to the assault charge, the state court expressly found that "there is reasonable cause to believe that the defendant committed a felony." DE 94-23.  Thus, plaintiff cannot satisfy the "absence of probable cause" element.  Accordingly, defendants are entitled to summary judgment on this aspect of the malicious prosecution charge.  *See Thompson v. Clark,* 596 U.S. 36, 44 (2022) (discussing interest in "avoid[ing] parallel litigation in civil and criminal proceedings over the issues of probable cause and guilt [and] inconsistent civil and criminal judgments.").

Yet the determination regarding one charge does not end the inquiry.  "[A] Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge." *Chiaverini v. City of Napoleon, Ohio,* 602 U.S. 556, 562 (2024) ("Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's charge by charge.")

In this case, regarding the unlawful imprisonment and resisting arrest charges, the facts

8

that might support a finding of probable cause remain very much in dispute. While defendants contend that plaintiff cannot demonstrate malice, sufficient evidence has been proffered from which, if credited, an inference of malice might be drawn. As such, plaintiff's malicious prosecution claim as it relates to the false imprisonment and resisting arrest charges survives.

   4. *Abuse of Process*

Defendants move to dismiss plaintiff's abuse of process claim, contending that plaintiff cannot demonstrate a "collateral objective" required to support such a claim. Recently, this Court held the following on this very same question and as to this same plaintiff:

> "[I]n New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). "In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action" and not simply a malicious motive, such as "to retaliate against him by pursuing his arrest and prosecution." *Id.* at 77 (internal quotations omitted).
>
> Here, plaintiff has failed to identify any improper purpose that is supported by the evidence of record. The only improper purpose plaintiff has ever alleged is that defendants intended to use plaintiff's prosecution to discredit him, thereby concealing and avoiding accountability for their torts against plaintiff. *See* DE 34 ¶¶ 117-19. At least one district court in this circuit has recognized "covering up [an] illegal arrest" as a plausible improper purpose at the motion-to-dismiss stage. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 617 (E.D.N.Y. 2017). But even if this qualifies as an improper purpose, plaintiff has not produced any evidence from which a jury could rationally infer that defendants' objective was in fact to effectuate a cover-up. Plaintiff's theory instead relies on "mere speculation or conjecture as to the true nature of the facts, [which is insufficient] to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotations omitted); *Sosa v. New York City Dep't of Educ.,* 406 F. Supp. 3d 266, 268–69 (E.D.N.Y. 2019) ("the non-movant cannot survive summary judgment merely by relying on the same conclusory allegations set forth in her complaint"). As plaintiff has failed to provide evidentiary support for this claim despite several opportunities to do so, summary judgment is granted as to the abuse of process claim.

*Jimenez v. Vargas*, 2025 WL 458244, at *7–8 (E.D.N.Y. Feb. 11, 2025). The same can be said

9

for this case, and defendants are entitled to summary judgment on the abuse of process claim.

    *5. Unreasonable Search and Seizure and Trespass*

Much like their argument relating to false arrest, the foundation of defendants' summary judgment motion as to the unreasonable search and seizure claim appears to rest upon the notion that "Defendants had probable cause to arrest Plaintiff." DE 94-27 at 12. Again, the facts underlying this conclusion remain very much in dispute. Defendants make this argument seeking to dismiss the search and seizure claim, citing authorities relating to searches incident to arrest. *Id.* This argument plainly misses the mark.

Equally misguided, however, is plaintiff's response, which focuses upon defendants' entry into plaintiff's home, arguing that such entry was unlawful. DE 95 at 13. On the undisputed facts, however, it is clear that defendants had probable cause to enter plaintiff's home to ensure the safety of its occupants. Taken together, the 9-1-1 call, the pandemonium at the scene, the requests by the officers to enter or, at a minimum, have plaintiff bring all of the occupants to the door to ensure their safety, and plaintiff's refusal to cooperate with such requests demonstrate that the police were justified in entering the home. As the Supreme Court has held:

> One exigency obviating the requirement of a warrant is the need to assist persons who are seriously injured or threatened with such injury. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury. *[S]ee also Georgia v. Randolph*, 547 U.S. 1031, 126 S.Ct. 1515, 1525 ("[I]t would be silly to suggest that the police would commit a tort by entering ... to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur").

*Brigham City, Utah v. Stuart*, 547 U.S. 398, 403–04 (2006). At a minimum, under the extraordinary undisputed circumstances here, defendants had arguable probable cause to enter if only to ensure the safety of occupants, and therefore would be entitled to

10

qualified immunity.

Thus, summary judgment is granted on the unreasonable search and seizure claim insofar as such claim relates to the initial entry into the home for the purposes of ensuring the safety of occupants, but is otherwise denied. For the same reasons, summary judgment is granted as to plaintiff's trespass claim.

6. *Excessive Force, Assault and Battery Claims*

On this motion, defendants argue that "Plaintiff was lawfully arrested and the force used to subdue the resisting Plaintiff was reasonable." DE 94-27 at 22. But wishing it does not make it so. With a set of facts that includes an admission by Javorowsky that he repeatedly punched plaintiff in an effort to obtain compliance with the administration of handcuffs, it cannot be said that there is no dispute as to whether reasonable force was employed. As such, the summary judgment motion as to the excessive force, assault and battery claims is denied as to Jarovowsky. At the same time, the undisputed facts demonstrate that Bilz was not present during the altercations, such that he is entitled to summary judgment on these claims.[6]

7. *Fabrication of Evidence*

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffe[red] a deprivation of life, liberty, or property as a result." *Barnes v. City of New York,* 68 F.4th

---

[6] Defendants argue that the failure to intervene claim fails because the individual defendants were both allegedly involved in the constitutional violations at issue, and are therefore not subject to a failure to intervene claim. As plaintiff failed to respond, the claim is deemed abandoned.

11

123, 128 (2d Cir. 2023). In this case, under oath, plaintiff was unable to identify a single instance of false testimony, statements, police reports, fabricated physical evidence or witness intimidation by the defendants. DE 94-4 at 171-180. Furthermore, despite the completion of discovery, his counsel fails to identify the specific fabricated evidence or information upon which this claim rests. DE 95 at 27-8. While one might attempt to deduce or infer the gravamen of this claim, it is far too late in the process to engage in such speculative endeavors, and it would be necessarily unfair to force defendants to litigate this claim under such circumstances. As such, summary judgment is granted as to the fabricated evidence claim.

    8.    *Intentional Infliction of Emotional Distress*

Plaintiff also asserts a claim for intentional infliction of emotional distress which requires the satisfaction of the following elements:

> (1) extreme and outrageous conduct, (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *Conboy v. AT & T Corp*., 241 F.3d 242 (2d Cir.2001). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790–791 (2d Cir.1996).

*Hamlett v. Santander Consumer USA Inc*., 931 F. Supp. 2d 451, 457 (E.D.N.Y. 2013). However, plaintiff's claim under an IIED theory fails for at least three reasons, as identified by former Chief Magistrate Judge Gold in another case involving alleged false arrest and malicious prosecution:

> In this case, the acts of the defendants in connection with plaintiffs' arrest do not amount to the type of outrageous conduct "beyond all possible bounds of decency" and "utterly intolerable in a civilized community" as to be actionable. *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Sylvester v. City of New York,* 23 Misc.3d 1139(A), at *5 (N.Y. Sup.Ct., N.Y. County, June 4, 2009) ("The emotional

12

>   distress plaintiffs experienced is inherent in any police arrest and detention and does not sustain a claim of intentional infliction of emotional distress."). Moreover, "public policy bars claims sounding in intentional infliction of emotional distress against a governmental entity," such as defendant MTA or defendant LIRR. *Wyllie v. District Atty. of County of Kings*, 2 A.D.3d 714, 720, 770 N.Y.S.2d 110 (2d Dep't 2003). Additionally, a claim for IIED based on false arrest and malicious prosecution is precluded by the fact that "the underlying conduct is actionable under another theory of tort liability." *Lewis v. U.S.,* 1999 WL 222611, at *2 (W.D.N.Y. Mar.26, 1999) (collecting cases); *see also Roper v. Hynes*, 2006 WL 2773032, at * 13 (S.D.N.Y. Sept.27, 2006) (dismissing plaintiff's IIED claim based on her criminal prosecution).

*Stampf v. Long Island R.R. Auth.*, 2010 WL 2517700, at *11 (E.D.N.Y. June 14, 2010).

These tenets apply with equal force to the instant matter, and hence summary judgment is warranted as to the IIED claims.

**CONCLUSION**

For these reasons, defendants motion for summary judgment is granted in part and denied in part to the extent set forth below:

| Claim | Ruling ||
|---|---|---|
| | **Granted** | **Denied** |
| Excessive Force; Assault; Battery (Javorowsky) | | X |
| Excessive Force; Assault; Battery (Bilz) | X | |
| §1983 Racial Discrimination | X | |
| False Arrest | | X |
| Malicious Prosecution (Assault) | X | |
| Malicious Prosecution (Unlawful Imprisonment) | | X |
| Malicious Prosecution (Resisting Arrest) | | X |
| Abuse of Process | X | |
| Unreasonable Search and Seizure (Initial Entry of Home) | X | |

13

| | | |
|---|---|---|
| Unreaosnable Search and Seizure (Other Searches and Seizures) | | X |
| Trespass | X | |
| Fabrication of Evidence | X | |
| Intentional Infliction of Emotional Distress | X | |
| Failure to Intervene | X | |

**SO ORDERED.**

Dated: Central Islip, New York
      September 24, 2025

                                       /s/ Gary R. Brown
                                       GARY R. BROWN
                                       United States District Judge

Case 2:18-cv-03911-GRB-AYS   Document 101   Filed 09/24/25   Page 14 of 14 PageID #: 2521